**Delma S. USHER, et al., Plaintiffs, Appellants,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.**

No. 83–1374.

United States Court of Appeals, First Circuit.

Heard Oct. 3, 1983.

Decided Nov. 22, 1983.

Celia Josephson, Boston, Mass., with whom Mark S. Coven, Boston, Mass., was on brief, for plaintiffs, appellants.

Robert J. Triba, Asst. Regional Atty., Dept. of Health and Human Services, Boston, Mass., with whom William F. Weld, U.S. Atty., and Nancy A. Serventi, Asst. U.S. Atty., Boston, Mass., were on brief, for defendant, appellee.

Before COFFIN and BOWNES, Circuit Judges, and SMITH,* Senior District Judge.

COFFIN, Circuit Judge.

In *Usher v. Schweiker,* 666 F.2d 652 (1st Cir.1981), we upheld the constitutionality of a Supplemental Security Income (SSI) regulation that required the Secretary of Health and Human Services to reduce SSI payments to an individual who is found to be receiving "in kind" assistance from, typically, a relative in the form of a rental that is below current market value. This decision disposed of ten of eleven claims for relief, leaving only one claim, involving the Privacy Act, 5 U.S.C. § 552a. Upon remand the district court dismissed this claim. We affirm.

The claim was initially made on behalf of several SSI recipients that the Social Security Administration violated 5 U.S.C. § 552a(e)(3)[1] when it requested rental value information from their landlords without indicating the purposes and routine uses of such information. Of the plaintiffs involved in the earlier phase of this litigation, all except appellant Rose Burgio have stipulated that the fair market values of their apartments were correctly determined by the Secretary. For this reason, only plaintiff Rose Burgio pursued the Privacy Act

claim below, asserting in a memorandum in support of a motion for summary judgment that "because of the defendant's failure to comply with the Privacy Act, the amount which the defendant used as the current market value of Ms. Burgio's apartment is incorrect". (Plaintiffs' Memorandum in Support of their Motion for Summary Judgment, p. 42).[2]

Unfortunately for plaintiff, neither allegations nor facts support this assertion. Plaintiff Burgio's petition to intervene recites that her daughter-landlady, in answering Social Security's inquiry, did not understand the reason for the inquiry and responded that, although her mother was paying only $100 a month, she would seek to charge $150 per month rental to a future tenant other than her mother. At no point does this plaintiff allege that either the information given Social Security or the final reduction in benefits was erroneous.

The administrative record reveals that on April 14, 1977, plaintiff's daughter submitted a statement to Social Security stating:

"We wouldn't rent it [the Burgio apartment] to anyone else as it is large in size and would probably be rented to a family with children, and my husband would not like the noise above in the apartment. If we absolutely had to rent it we would charge $150 per month rent and they would pay there [sic] own heat."

Subsequently, it was determined that plaintiff was receiving assistance in the form of a subsidy in her expenses for shelter. On April 27, 1978, aided by an attorney, she requested a hearing, but indicated that she had no additional evidence to submit. At

---

* Of the District of Montana, sitting by designation.

1. 5 U.S.C. § 552a(e) provides in relevant part that

"Each agency that maintains a system of records shall—....
(3) inform each individual whom it asks to supply information on the form ....

\* \* \* \* \* \*

(B) the principal purpose or purposes for which the information is intended to be used;

(C) the routine uses which may be made of the information ...."

2. Notwithstanding this narrowing of the field to one plaintiff, appellants' brief describes the essence of this appeal in the following language: "Plaintiffs maintain that the defendant has incorrectly determined the fair market value of their apartments and thus reduced their SSI benefits based on an [sic] inaccurate figures".

the hearing plaintiff's daughter, on being reminded of her earlier statement about charging $150 to others, testified "Well, it was just being very honest and we had been told that was the fair market value of the apartment at the time (Tr. 44) . . . . it's five rooms, it's a nice apartment, it's beautiful . . . . completely carpeted". (Tr. 45)

■ After the hearing, the administrative law judge concluded that the current market value of plaintiff's apartment was $150 a month and that she should be charged with $50 a month unearned income. Plaintiff has not attacked this finding as being unsupported by substantial evidence. Accordingly, her claim is in the same posture as that of the other plaintiffs: we are bound by the unappealed finding as fully as by the stipulation that, whether or not the Social Security forms violated the Privacy Act, they yielded no inaccurate information to influence the Secretary's reduction of benefits. And since the only damages alleged are those owing to a wrongful reduction of benefits, there remains no possibility of plaintiff's suffering any "adverse effect" under 5 U.S.C. § 552a(g)(1)(D), a prerequisite for any civil action.

■ The fact that plaintiff Burgio could not attribute her reduction in benefits to any misinformation collected as the result of the failure of Social Security to advise informants of the purposes and routine uses of information requested ends this appeal but not our concern. We see no basis in the statute for an agency's refusing to give the information specified in 5 U.S.C. § 552a(e)(3). We agree with the observation in *Saunders v. Schweiker,* 508 F.Supp. 305 (W.D.N.Y.1981), that the purpose of the statute is "to let citizens know why and for what reasons the United States is asking them questions". 508 F.Supp. at 309. The district court felt similarly, for it suggested to the Boston regional office of Health and Human Services through the United States Attorney that appropriate information accompany every written inquiry. To date this suggestion has been received with a monumental indifference. Accordingly, although the governmental defendant wins

this appeal, we observe that its intransigence has contributed to the bringing of it. We therefore award appellants their costs.

*Affirmed. Costs to appellants.*